UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OMEIL NOVADO MORGAN,

      Plaintiff,

  -against-

THE CITY OF NEW YORK, OFFICER MIHAI,
TUDOR, SERGEANT ERIC RODRIGUEZ,
OFFICER CHRISTOPHER SANCHEZ,
SERGEANT SANDRINA OSBORNE,

      Defendants.
------------------------------------------------------------X

DECISION AND
ORDER

12-CV-704

**WILLIAM F. KUNTZ, II, United States District Judge**

This action arises out of Plaintiff Omeil Morgan's allegedly wrongful arrest on October 1, 2010. Morgan claims that he was standing on a street corner in Brooklyn, New York, when he was approached by a police officer and then handcuffed without cause. Plaintiff was then searched and taken to the police precinct, where his turban was removed. Though Plaintiff was subsequently released, he was issued summons for disorderly conduct and for possession of a knife. Plaintiff brings claims under 42 U.S.C. § 1983, the "right of religious freedom," the Fourth Amendment, the Fourteenth Amendment, and the Eighth Amendment. Defendants have moved for summary judgment. The Court supplants its prior order (*see* ECF Order dated July 1, 2014) and grants in part and denies in part Defendants' Motion for Summary Judgment. Plaintiff's remaining claims will be adjudicated at the forthcoming jury trial.

**I. Background**

 **A. Relevant Facts**

Plaintiff[1] is a self-described "34-year-old Black man and a member of faith in HIS IMPERIAL MAJESTY EMPEROR HAILE SELASSIE I (RASTAFARIAN.)." Dkt. 18 ("Second Am. Compl.") at 3. Plaintiff alleges that he wears a turban "[a]s a Priest in the ancient

---

[1] Plaintiff styles his name as "OMeil NOVado MORgan." *See* Dkt. 48 at 8.

—1—

priesthood order of Melchisedec, in his way of living a spiritual life through OUR HOLY FATHER SUPREME." *Id.*

At approximately 9:00 p.m. on October 1, 2010, Plaintiff was standing on the corner[2] of Lincoln Place and Nostrand Avenue. Dkt. 48-2 ("Pl.'s Dep.") at 40.[3] Plaintiff was "on [a] moving job" and had parked a rental truck in the middle of Lincoln Place. Dkt. 46 (Pl.'s R. 56.1 Statement, hereinafter "Dkt. 46") at 4; Pl.'s Dep. at 37. Officer Mihai Tudor then approached Plaintiff and requested to see his identification. Pl.'s Dep. at 41, 44. Plaintiff refused to give Officer Tudor his identification,[4] and was subsequently arrested. *Id.* at 45-46. In the Complaint/Information filed about Defendant's arrest, Officer Tudor wrote that he "observed [Plaintiff] acting in a loud and boisterous manner causing public alarm" and that Plaintiff stated "I don't have to listen to you. I[']m a god." Dkt. 48-14 (Pl.'s Aff. Ex. N). Plaintiff confirms that he made these statements, and admits that he repeatedly stated "I am a god, I don't have to listen to you." Dkt. 46 at 7. However, Plaintiff states that he was not making unreasonable noise and states that at no time did the officers explain why he was being arrested. Dkt. 47 (Pl.'s Opp. to Defs.' R. 56.1 Statement, hereinafter "Dkt. 47") at 2-3.

Officer Christopher Sanchez searched Plaintiff pursuant to the arrest. *Id.* at 3. During that search, Officer Sanchez found a knife on Plaintiff's person with a blade length of four inches. *Id.*; Dkt. 43-3 ("Property Clerk Invoice"); Dkt. 43-4 ("Picture of Knife"); *see also* Dkt.

---

[2] Plaintiff also characterizes the location as being the "cross-walk." Dkt. 47 (Pl.'s Opp. to Defs.' R. 56.1 Statement, hereinafter "Dkt. 47") at 2.

[3] Both parties attach transcripts of Plaintiff's deposition to their moving papers. *See* Dkt. 43-2. This Order cites to Plaintiff's attached transcript, excluding any handwritten marks thereto, because Plaintiff has attached the full transcript. *See* Dkt. 48-2.

[4] Plaintiff denies this fact in his "Irrifutable [*sic*] Statement Opposing Defendants' Statement of Undisputed Fact Pursuant to Local Civil Rule 56.1," but admits that instead of providing his identification, he responded "why." Dkt. 47 at 2.

47 at 5 (admitting that blade was measured at four inches in length). Plaintiff states that this knife was a "work knife" because he was working as a mover. Dkt. 47 at 3.

Plaintiff was subsequently transferred to the 77th Precinct in Brooklyn, New York, where Officer Sanchez removed his turban. Pl.'s Dep. at 44, 52-53. Plaintiff's turban had not been removed at the time of arrest pursuant to Sergeant Eric Rodriguez's instructions. *Id.* at 79. The turban was placed in a property box along with other inmates' property. *Id.* at 53. Plaintiff was eventually released and issued summonses for disorderly conduct and unlawful possession of a weapon. *Id.* at 54-55. The total time that Plaintiff did not have his turban on was approximately twenty minutes to half an hour. *Id.* at 54.

Plaintiff alleges that when he was arrested, the handcuffs were "extremely tight." *Id.* at 47. While he was being handcuffed and at the precinct, Plaintiff asked Officer Rodriguez (or Sanchez) and Bench Officer Sandrina Osborne whether the handcuffs could be loosened, because his hands were "numbed completely." *Id.* at 38-39, 46-47; Dkt. 46 at 5. Officer Osborne told Plaintiff that the handcuffs would soon be taken off. Pl.'s Dep. at 51. The handcuffs stayed on Plaintiff for approximately three hours. *Id.* at 53.

Plaintiff first sought medical attention for "bruises swelling and soreness" on his wrists on October 8, 2010, at the Brookdale Medical Center emergency room in Brooklyn, New York. *Id.* at 63. Plaintiff was examined and prescribed pain medication, and was diagnosed with contusions on both hands and either a pinched nerve or slight nerve damage. *Id.* at 63-64. On December 11, 2012, Plaintiff sought medical attention from the New York College of Traditional Chinese Medicine for lower back pain. *See* Dkt. 43-6 (New York College of Traditional Chinese Medicine Records).

Plaintiff also alleges that the New York Police Department has a widespread policy of "Stop, Question and Frisk, against African Descent Males." Dkt. 46 at 8. To support this allegation, Plaintiff provides news articles about racial imbalances in stop-and-frisks and about a lawsuit filed against the NYPD regarding the same. Second Am. Compl. at Ex. 1-3. Plaintiff also claims that he filed Civilian Complaint Review Board ("CCRB") and Internal Affairs Bureau ("IAB") complaints against Defendants but "[n]ever [received] any notice of discipline to officers." Dkt. 46 at 7.

## II. Analysis

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the court is not to weigh the evidence and

determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex*, 477 U.S. at 322-23 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude the granting of [a summary judgment] motion."). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

The Court is mindful that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases) (internal quotation marks omitted). This liberal standard is particularly important when a plaintiff alleges a violation of his civil rights. *See Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008).

## B. Defendants' Motion Regarding Plaintiff's Fourth Amendment Claims

Defendants read the complaint "broadly" and argue that they are entitled to summary judgment because: "(1) it is undisputed that there was probable cause for plaintiff's arrest; (2) under the undisputed facts, there was probable cause for plaintiff's prosecution; (3) it is undisputed that the individual defendants did not use excessive force against plaintiff; (4) it is undisputed that Sergeant Osborne and Sergeant Rodriguez were not personally involved in the alleged incident; and (5) Officer Sanchez and Officer Tudor are entitled to qualified immunity." Dkt. 44 (Defs.' Memorandum of Law, hereinafter "Mot.") at 4. The Court will address each argument in turn.

### 1. Plaintiff's Arrest

The events in this case may be divided into two segments. *First*, the police stopped Plaintiff in a *Terry* investigative stop, and placed him in handcuffs. *Second*, the police found the knife on Plaintiff's person and subsequently transported him to the 77th Precinct for further proceedings. Defendants' central argument with regards to the legality of Plaintiff's arrest is that Plaintiff was in criminal possession of a knife with a blade length of four inches or longer. Mot. at 4.

As a preliminary matter, the Court notes that Defendants have not addressed the first series of events, which forms the base of Plaintiff's *Terry* stop claim. Plaintiff makes numerous allegations about New York City's Stop, Question, and Frisk program, *see* Second Am. Compl. at ¶¶ 2-4, 13-14, and about the police's investigative stop of him, *see id.* at 20-21. Under federal and New York law, police may only stop a person when they reasonably suspect that he is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22, (1968); *see United States v. Sokolow*, 490 U.S. 1, 7 (1989) (a *Terry* investigative stop must be based on "reasonable

suspicion supported by articulable facts" that criminal activity is afoot). Police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest]." *Terry*, 392 U.S. at 21.

Because Defendants do not move for summary judgment on the *Terry* stop claim, this claim still stands.[5] Nonetheless, Defendants are correct that the discovery of the four inch knife constituted probable cause, thereby defeating Plaintiff's claims regarding the second series of the events: the alleged false arrest and malicious prosecution. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (probable cause is a "complete defense" to a § 1983 false arrest claim). A § 1983 claim for false arrest requires proof of the same four elements as a claim for false arrest under New York law: (1) the defendant intentionally confined plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). A malicious prosecution claim requires the plaintiff to prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 136. Probable cause "requires an arresting officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez*

---

[5] The Court notes, however, that the record as it stands does not appear to contain evidence of the requisite "reasonable suspicion[:]" Plaintiff appears to have been standing on a street corner or crosswalk alone. Admittedly, Defendants have not yet argued that the initial stop was reasonable, and additional evidence may exist. Nonetheless, the Court notes the current dearth of evidence that Plaintiff was causing a disturbance, bothering other individuals, or being "disorderly" in any sense. *See* New York Penal Law ("N.Y.P.L.") § 240.20 (listing causes for disorderly conduct violation).

*v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)) (internal quotations omitted).

Here, the evidence establishes, and Plaintiff admits, that he was in possession of a four inch knife. Thus, when the police found this knife, probable cause was established to arrest Plaintiff for violation of N.Y.C. Admin. Code § 10-133(b) ("It shall be unlawful for any person to carry on his or her person or have in such person's possession, in any public place, street, or park any knife which has a blade length of four inches or more."). Plaintiff alleges in his papers that the knife was a "work knife" that he was using for his moving job, but there is no indication that Plaintiff related this fact to the officers nor that the officers were aware of this fact. Even if he had, the officers were under no duty to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002) (quoting *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001)). Thus, probable cause for the arrest existed, and Plaintiff's claims for false arrest (as part of Count VI) and malicious prosecution (Count IX, and part of Count VII) cannot withstand summary judgment. *See Stefanopoulos v. City of New York*, 01-CV-0771, 2005 WL 525552, at *3 (E.D.N.Y. Feb. 28, 2005) (Johnson, J.) (granting summary judgment for defendants on false arrest and malicious prosecution claims because probable cause existed based on valid search warrant and recovery of illegal switchblade).[6]

---

[6] Because probable cause is established by the proffered evidence, it is unnecessary to engage in the "arguable" probable cause analysis for qualified immunity. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("A police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.").

The Court reminds the parties that because probable cause existed once the knife was found on Plaintiff's person, Plaintiff may only seek recovery for damages that accrued from the time of the stop until the moment that the knife was found. *See Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that resulted from the discovery of incriminating evidence and consequent criminal prosecution."); *Kennedy v. City of New York*, 11-CV-1451, 2013 WL 3490351, at *4 (E.D.N.Y. July 10, 2013) (Korman, J.) (plaintiff "would be able to recover only the nominal damages arising from the minor invasion of privacy occasioned by the stop of his car [as] [h]is subsequent arrest was clearly supported by probable cause and therefore caused no damages for which he could recover"). Thus, Plaintiff may not recover damages arising from the false arrest and malicious prosecution.[7]

2. <u>Plaintiff's Excessive Force Claim</u>

Plaintiff brings excessive force claims under the Fourth, Eighth, and Fourteenth Amendments, and Section 1983 (Count VI – VIII, X). Defendants move for summary judgment,

---

[7] The Court notes that one court in the Southern District of New York has found that *Townes* does not preclude damages on a malicious prosecution claim. *See Gannon v. City of New York*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) (Baer, J.) (declining to apply *Townes* after denying defendants' motion for summary judgment on malicious prosecution claim). However, unlike in *Gannon*, Plaintiff in this case does not "specifically ask[] for damages for . . . malicious prosecution" or "allege sufficient facts" to support a malicious prosecution claim. *Compare id.* Even if those facts were present, the Court would follow the weight of cases finding that *Townes* applies to malicious prosecution damages. *See, e.g., Cyrus v. City of New York*, 06-CV-4685, 2010 WL 148078, at *4 (E.D.N.Y. Jan. 14, 2010) (Ross, J.) ("The court's conclusion that the 'exclusionary rule does not apply to the probable cause determination in malicious prosecution claims' is fully supported by the decisions cited for support."); *see also DiMascio v. City of Albany*, 205 F.3d 1322, at *2 (2d Cir. 2000) (unpublished decision citing *Townes* and finding that defendants would not be liable for malicious prosecution damages after independent cause for prosecution occurred).

arguing that Plaintiff "merely alleges to have suffered minor discomfort—pain and bruising." Mot. at 9. Defendants' characterization is incorrect.

To assess Plaintiff's claim for excessive force based on handcuffing, the Court considers evidence that: "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 441 (E.D.N.Y. 2012) (Matsumoto, J.). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising . . . brief numbness from tight handcuffing . . . [and] claims of minor discomfort from tight handcuffing[.]" *Lemmo v. McKoy*, 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (Dearie, J.) (collecting cases) (internal citations omitted). By contrast, handcuffing that causes "intense pain and long-lasting injury . . . falls far from the hazy border between excessive and acceptable force." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 598 (S.D.N.Y. 2013) (Oetken, J.) (denying Defendant's qualified immunity defense on an excessive force handcuffing claim on summary judgment).

The Court finds sufficient evidence in the record that Plaintiff suffered compensable injury from excessive handcuffing. Plaintiff has submitted medical records indicating that he sought medical treatment a week after the incident, and that he presented with "Pain hands/wrists for 1 Week(s). . . . The symptoms are Severe, achey, Constant, crescendo." Dkt. 48-19 (Pl.'s Aff., Ex. S) at 3. The treating physician diagnosed Plaintiff with Pain, Peripheral Neuropathy and Contusion (Extremity), and prescribed him medicine ("neuronton"). *Id.* at 4-6.

Defendants attempt to downplay this evidence by arguing that Plaintiff "did not seek any medical treatment for his alleged injuries until a week after the incident" and that the trip to the emergency room "coincidentally occurred after plaintiff met [with his] former attorney." Mot. at

9. These arguments do little to discount the uncontested medical records submitted by Plaintiff, and certainly do not convince the Court that no disputed issue of material fact exists. Thus, Defendants' motion as to the excessive force claim is denied.

### 3. Defendants Rodriguez and Osborne Will Not Be Dismissed

Defendants argue that Defendant Sgt. Rodriguez should be dismissed because he "was not personally involve[d] in the incident that is the subject of this litigation." *See* Mot. at 10 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)). However, Rodriguez appears to have been involved in the removal of Plaintiff's turban, which is at issue in Plaintiff's freedom of religion claim (*see supra* Section D). Further, as Defendants concede, Rodriguez was one of the officers to whom Plaintiff allegedly unsuccessfully complained about his tight handcuffs. Dkt. 50 ("Reply Br.") at 6. Because Rodriguez appears to have been a participant in the incidents at issue in this case, he may not be dismissed at this time.

Defendants also state that they will argue that Defendant Osborne was not personally involved in the incident, *see* Mot. at 4, but then fail to do so anywhere in their Motion. *See* Mot. at 10 (only addressing involvement of Defendant Rodriguez); *see also* Second Am. Compl. at 9. Thus, Defendant Osborne will not be dismissed at this juncture.

### C. Plaintiff's *Monell* Claim

Plaintiff's Second Amended Complaint alleges that "an official policy, Stop, Question, and Frisk, of the NYPD caused his constitutional and statutory injuries." Second Am. Compl. at 14 (Count I). However, Plaintiff does not introduce sufficient evidence of this alleged official policy, nor does he connect that official policy to his constitutional injuries, so his *Monell* claim must be dismissed.

Pursuant to *Monell v. Dep't of Soc. Servs.*, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* A plaintiff making a *Monell* claim must establish three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

In support of his *Monell* argument, Plaintiff attaches news articles regarding NYPD's Stop and Frisk policy and the Southern District case *Floyd v. The City of New York*, 08-CV-1034 (S.D.N.Y. 2008) (Scheindlin, J.).[8] Plaintiff also cites his own deposition, a purported video regarding his arrest, and notes from his "personal Law Book" documenting NYPD "misbehavior." *See* Dkt. 46 at 7-8.

Plaintiff has not presented sufficient evidence to sustain a *Monell* claim. The only tangible evidence Plaintiff has introduced of an official policy or custom consists of three news articles regarding NYPD's stop-and-frisk policy, two of which recount the allegations of another pending litigation against the City of New York. The Court may take judicial notice of filings in other proceedings, but may not import the evidence and arguments from another case to bolster Plaintiff's case.[9] Further, newspaper articles are themselves hearsay and cannot be admitted.

---

[8] In *Ligon v. City of New York*, 736 F.3d 118, 124 (2d Cir. 2013) *vacated in part*, 743 F.3d 362, 365 (2d Cir. 2014), the Second Circuit issued an order removing Judge Scheindlin from the case.

[9] In *Floyd*, plaintiffs brought a Fourth and Fourteenth Amendment class action against the NYPD for its stop and frisk policy. After a nine-week trial, Judge Scheindlin held that the City of New York had violated plaintiffs' rights under the Fourth and Fourteenth Amendment, and issued an opinion setting forth remedial measures with regards to NYPD's stop-and-frisk policy. 959 F. Supp. 2d 668 (S.D.N.Y. 2013). After Judge Scheindlin was removed as the presiding

Plaintiff has therefore not created a triable issue of material fact on his *Monell* claim, and it must be dismissed. *See Delrosario v. City of New York*, 07-CV-2027, 2010 WL 882990, at *7 (S.D.N.Y. Mar. 4, 2010) (Sullivan, J.) (dismissing *Monell* claim on summary judgment where plaintiff had cited another pending lawsuit and introduced newspaper articles).

Moreover, Plaintiff has not produced sufficient evidence that his alleged constitutional injury was *caused* by the purported policy or custom of which he complains. *See Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (plaintiff must show "a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.") (internal citations and quotations omitted); *Vaiana v. Nassau Cnty. Dep't of Corr.*, 11-CV-1013, 2012 WL 541086, at *4 (E.D.N.Y. Feb. 21, 2012) (Bianco, J.) (citing *Monell*, 436 U.S. at 691) ("[L]iability is limited to constitutional violations that occurred *as a result of* a government's policy or custom.") (emphasis added); *Acosta v. City of New York*, 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (Forrest, J.) (dismissing *Monell* claim because plaintiff failed to set forth factual allegations that policies or customs caused alleged violations of plaintiff's rights). Plaintiff has alleged that he was a "victim to NYPD widespread policy, stop, Question and Frisk, against African Descent Males" on three separate occasions, *see* Dkt. 46 at 7-8, but these alleged individual experiences do not establish the requisite causal link to any NYPD policy or practice. Plaintiff does not connect his experiences to the allegations set forth in the news articles, and the Court is left to speculate as to this relation. Thus, Plaintiff's *Monell* claim must be dismissed on summary judgment.

---

judge, the case was remanded for the limited purpose of exploring settlement discussions. *See* 743 F.3d 362 (2d Cir. 2014). However, neither party has made an argument that *Floyd* affects the disposition of this case. Absent a showing that it should, the Court will not adopt the findings or conclusions of that case.

D.   **Plaintiff's Religious Freedom Claims**

Plaintiff's Second Amended Complaint alleges a violation of Plaintiff's "Right of Religious Freedom in violation of the First Amendment of the United States Constitution and 42 U.S.C. § 2000BB-1." Second Am. Compl. at 16. Defendants move for summary judgment on Plaintiff's First Amendment claim, arguing that the claim should be dismissed because (1) Plaintiff has not demonstrated a specific burden on his religious beliefs and (2) Defendants' actions were reasonable under *Turner v. Safley*, 482 U.S. 78 (1987).[10] The Court finds that Plaintiff has identified a specific burden on his religious beliefs by virtue of the removal of his turban, and that Defendants have not introduced evidence showing that the *Turner* factors compel dismissal.

To establish a violation of the free exercise clause of the First Amendment, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006). This substantial burden arises when "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (internal quotations omitted). Once that showing is made, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct[.]"

---

[10] The Court notes that Defendants have chosen not to address Plaintiff's claim under 42 U.S.C. § 2000BB-1, the Religious Freedom Restoration Act (RFRA). In *Jolly v. Coughlin*, 76 F.3d 468, the Second Circuit held that the RFRA's "compelling government interest test" applies to inmates bringing RFRA claims. 76 F.3d 468, 474-75 (2d Cir. 1996). However, in *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court held that the RFRA was unconstitutional as applied to state and local governments. Plaintiff also has failed to bring his claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), and neither party has addressed that statute. Thus, the Court dismisses Plaintiff's 42 U.S.C. § 2000BB-1 as a matter of law.

*Salahuddin*, 467 F.3d at 275; *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). The four-factor test for determining reasonableness questions: "(1) whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; (2) whether prisoners have alternative means of exercising the burdened right; (3) the impact on guards, inmates and prison resources of accommodating the right; and (4) the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." *Salahuddin*, 467 F.3d at 274 (citing *Turner*, 482 U.S. at 90-91).

Plaintiff has shown that the removal of his turban substantially burdens his sincerely held religious beliefs. *See* Dkt. 46 at 2 n.5 (describing the significance of wearing a turban in the Rastafari religion); Dkt. 47 at 6-7; Dkt. 48-22 (Ex. V) at 3 (journal describing turban wearing); *see also Singh v. Goord*, 520 F. Supp. 2d 487, 503 (S.D.N.Y. 2007) (Robinson, J.) (RLUIPA case finding that "[b]ecause plaintiff sincerely believes he is required to wear his turban at all times, the Court holds that plaintiff has demonstrated a substantial burden on his religious exercise."); *Amaker v. Goord*, 06-CV-490, 2010 WL 2595286, at *8-9 (W.D.N.Y. Mar. 25, 2010) (Schroeder, M.J.) (in RLUIPA context, finding "little difficulty determining that forcing an individual who sincerely believes that he should wear dreadlocks as part of his religious practice to either forgo his affiliation with the Nation of Islam or face discipline constitutes a substantial burden upon that individual's religious practice"), *report and recommendation adopted*, 2010 WL 2572972 (W.D.N.Y. June 23, 2010) (Arcara, J.).

Further, Defendants have not demonstrated that the removal of Plaintiff's turban was reasonably related to legitimate penological interests—namely, the safety interests of determining what may be concealed within the turban. The Court recognizes that Defendants have *argued* that legitimate penological interests exist, but have not produced *evidence* of this

purported interest. *See* Mot. at 15. Defendants' burden is a limited one—to have prison officials "testify to the legitimate penological interests behind the challenged conduct to meet their burden of proof"—but Defendants have not even made this minimal effort. *See Salahuddin,* 467 F.3d at 275; *see also Farid v. Smith,* 850 F.2d 917, 925-26 (2d Cir. 1988) (on First Amendment claim, finding that summary judgment was inappropriate because defendant had "yet to articulate with record evidence a legitimate penological interest"); *cf. Walker v. Artus,* 10-CV-1431, 2013 WL 5464909, at *10-11 (N.D.N.Y. Sept. 30, 2013) (D'Agostino, J.) (reviewing substantial evidence of a legitimate penological interest and granting defendant's motion for summary judgment).

Because there is a lack of evidence in the record supporting a valid penological interest, and Plaintiff has identified with supporting evidence a substantial burden on his sincerely held religious beliefs, the Court cannot find that the *Turner* factors favor Defendants. Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claim is denied.

### E. Plaintiff's Negligence Claims

Defendants argue that Plaintiff has submitted no evidence in support of his "New York State law" claims for negligent hiring, retaining, training, and supervising. Mot. at 15-16. However, Plaintiff's Claims II-IV are brought pursuant to 42 U.S.C. § 1983, not New York State law. *See* Second Am. Compl. at 14-16. Because Defendant has not moved to address Plaintiff's causes of actions as set forth in his Second Amended Complaint, those causes of actions still stand.

## III. Conclusion

Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's false arrest and malicious prosecution claims, *Monell* claim, and 42 U.S.C. § 2000BB-1 claims. However, Defendants' Motion is DENIED as to the allegedly unreasonable *Terry* stop and use of excessive

force, as well as to Plaintiff's First Amendment free exercise claim. Further, because Defendants did not move to dismiss Plaintiff's 42 U.S.C. § 1983 claims as to negligent hiring, retaining, training, and supervising, those claims will go forward at trial. This Order replaces the prior Summary Judgment Order issued on ECF on July 1, 2014.

**SO ORDERED**

Dated: July 10, 2014
Brooklyn, New York

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge